BENNET, ADMINISTRATOR, *v.* HARGUS.

Bennet, administrator, v. Hargus.

1. REPEALS. A right of action or remedy, founded solely upon a statute or a suit to enforce such remedy, not prosecuted to judgment, is determined by the repeal of the statute.

*O. P. Mason,* for plaintiff.

*J. F. Kinney,* contra.

WAKELY, J.

The administrator of Lacy commenced this suit against Hargus on the 14th day of March, 1858. The petition alleges that, on the 23d day of April, 1856, the defendant "wrongfully, maliciously, feloniously and unlawfully," assaulted Lacy, in consequence of which he died on the 25th of the same month.

The answer set up, among other things, that the statute which authorized a suit by an administrator for damages in such a case had been repealed. To this part of the answer the plaintiff demurred. The parties stipulated that the demurrer should be sustained, and the case should then be taken to this court for a decision upon the question raised by the demurrer. The district court accordingly sustained the demurrer, *pro forma,* without argument. The effect of the ruling was that the repeal of the statute in question did not prevent a recovery.

It is not claimed that this suit could be sustained without the aid of the statute. At common law, the remedy for injury to life was merged in the public offense. An action, *ex delicto,* abated by the death of the sole plaintiff. The right to bring it died with the person. *Actio personalis moritur cum persona,* was the established rule of the common law. We are to see then what has been the effect of the legislation upon this subject.

BENNET, ADMINISTRATOR, v. HARGUS.

The statutes of 1855, page 145, contained these provisions: "The right of a civil remedy is not merged in a public offense." "When a wrongful act produces death the perpetrator is civilly liable for the injury. The parties to the action shall be the same as though brought for a claim founded on a contract against the wrongdoer." While these provisions remained in force an administrator might doubtless have prosecuted a suit effectually upon such a cause of action as the petition in this case sets forth. They were in force when the act is alleged to have been committed, but, in February, 1857, before this suit was commenced, the civil code, of which these provisions were a part, was directly and in terms repealed, without any attempt to save pending suits or rights of action which had accrued under the statute repealed. The repealing act took effect from its passage. The date of its enactment does not appear in the printed volume of laws, nor is the precise day material. It was a special and separate act repealing absolutely and unconditionally, by a single section, both the civil and the criminal codes of the Territory. On the 13th day of February, 1857, the date of the repealing act, as was stated in the argument, a new code was adopted in place of the one repealed, containing the identical provisions above quoted; but this did not take effect until the first day of June then next. This code was in force when this suit was commenced, but it, in turn, was repealed by the present civil code of the Territory, which took effect February 1, 1859, with a provision "saving rights which shall have attached by virtue of any of the provisions contained in any of the chapters above repealed."

Such has been the legislation upon the subject. Has it put an end to the right of the administrator to maintain this suit?

By a long course of judicial decisions it has become a settled principle that a right of action, or a remedy founded

solely on a statute, or a pending suit to enforce such remedy, not prosecuted to judgment, is terminated by the repeal of such statute, without a provision for saving rights accrued under it, or suits already commenced to enforce them. The reason is apparent. If there be no such remedy at common law, then, after the unconditional repeal of the statute which created it, there is neither common law nor statute to uphold it. I need not cite authorities to sustain this position, which, as a general principle, I understand to be conceded. I will refer to a few cases which seem to establish the power of the legislature to take away the remedy in such a case as that before us, by repealing the statute which creates it.

In 1 *Hill*, 325, the question was whether the time allowed for the redemption of mortgaged premises sold upon decree could be abridged by an act passed subsequent to the sale, it was held that "inchoate rights, generally derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute, otherwise as to those which have ceased to be executory and have become executed." The statute was held to be valid, and to apply to sales already made.

In 6 *Wendell*, 526, Savage, Ch. J., says: "It will not be denied, I presume, that it is competent for the legislature to repeal an act upon which a suit has been brought, and, if the repeal is absolute, such suit is at an end. For instance, the present statutes prohibit gaming, and allow an action to be brought to recover back money won at play; an action is brought and ready for trial; the day before the circuit the legislature repeals the act; the suit dies because the court has no jurisdiction to proceed; the party has no right to recover his money. Such right did exist subject to the contingency of obtaining a judgment, and such jurisdiction, too, existed; but both have been taken away, because the means of enforcing the right no

longer exist. * * * But it cannot be denied that the legislature possess the power to take away by statute, what was given by statute, except vested rights."

In 7 *Johnson*, 477, the court decided that the legislature might, after a right of action had accrued against a sheriff for the negligent escape of a debtor, take away the remedy which existed at the time. YATES, J., said: "There is nothing in the State constitution to prevent legislative interference, and being in the nature of a tort, and not a contract, this question cannot be affected by the constitution of the United States, which declares that no State shall pass an *ex post facto* law or law impairing the obligation of contracts." SPENCER, J., said: "It cannot admit of argument that the act impairs the obligation of contracts. It is an action for a tort, for a wrongful escape of a debtor in the sheriff's custody, and it would be a waste of time to cite authorities, which are numberless, that the escape being a tort, the remedy is lost if the sheriff should die, and there would be no relief against his representatives."

In 11 *Maine*, 234, we find the following in the opinion of the court: "The act of January 31, 1854, providing 'that no action should thereafter be maintained to recover damages for the escape of any debtor committed on execution, except a special action on the case,' operated upon actions pending. Such an act is not unconstitutional on the ground of operating retrospectively or disturbing vested rights."

In 36 *Maine*, 365, was a suit by the assessors of Macknawhoe plantations for trespass on lands reserved for public use. The court, by TENNEY, J., says: "This action was commenced in the name of the proper party plaintiffs, by authority of statute, 1850. But when the action was tried that section had been repealed, without any exception in reference to actions pending at the time of the repeal. No statute giving power to the inhabitants of plantations to

BENNET, ADMINISTRATOR, v. HARGUS.

commence and maintain suits for trespasses committed upon lots in such plantations reserved for public uses, was then in existence, and the non-suit was properly ordered."

I need not multiply citations in support of the power of the legislature to take away the remedy it has given for a tort, before such remedy has been followed to judgment. The books abound in cases sustaining the general principle that rights and remedies given only by statute are lost by its unconditional repeal, save only vested rights. And it is sufficient to say that no respectable authority will be found to the effect that a mere right to sue for a tort is, previous to the commencement of a suit, a vested right which the legislature cannot disturb. In Smith on Statutes, which is not now accessible to me, the questions involved in this case are treated at large.

We were referred to 7 *Ohio*, 257, as an authority that a remedy is not lost by a repeal of the statute creating it. That was a peculiar case. Property was attached and held at the time of the revision of the statutes in 1810, when the attachment law, with numerous others, was formally repealed, and a new one, precisely similar, was enacted as a part of the Revised Statutes. In 1835, twenty-five years after the revision, the court was asked to hold the proceedings in attachment invalid by reason of such repeal, and placed its refusal so to do on this ground: "No question was raised at the time as to their effect upon such pending suits. The bar and the bench seem to have concurred in the interpretation of the legislature of that day, that, in remedial proceedings, such saving clause was unnecessary. It would be very unsafe for us now to disturb this then universally admitted proposition upon the authority of the jurists or of the adjudged cases of other states or countries."

That case differed from this widely. A lien upon property had been acquired in a suit pending on a contract at

the time of the repeal. It partook somewhat of the character of a vested right. Whether the case was rightly decided or not, it ought not to outweigh the numerous authorities applicable to the particular case before us, especially in view of the reasons which the court assigns for its conclusion, and of the implied admission that the "jurists and the adjudged cases of other States and countries" were against the position to which the court was forced by special circumstances surrounding the case before it.

It was urged on the argument that the provisions in question were not really repealed, because they were continued in the code which took the place of the repealed one. There is no force in this suggestion. The old code, containing those provisions, was totally, unqualifiedly and in terms, repealed. No language could have been employed which was more effectual. Also, that the act of 1857, when it took effect, operated as a repeal of the repealing act, and revived the repealing statute, thus saving the right of action which accrued under it. *Smith on Statutes*, 791. There is a wide and palpable distinction between the enactment of a statute precisely like a former one and an express repeal of the act which repealed such former one. It is too evident to require argument.

A question is made as to the regularity of the pleadings. It is claimed that the defendant should have demurred to the petition, instead of setting up by answer that there was no cause of action on the ground of the repeal of the statute, that being a question of law presented by the petition on its face. This might have been done; but the plaintiff demurred to the answer, and the judgment upon demurrer must be against the party whose pleading was first defective in substance. *Ch. Pl.* 1, 668. Besides, no question was made in the district court on this point of formality, and we understand the stipulation to have been

BENNET, ADMINISTRATOR, *v.* HARGUS.

made for the purpose of having a determination in this court of the real question involved — the right of the administrator to maintain this action. We are all of the opinion that it cannot be maintained, and that the judgment of the district court must be reversed.

The stipulation provides that, in such event, the suit shall be dismissed ; but we do not understand that it is to be dismissed by this court, and we order it to be remanded to the district court for further proceedings, in conformity with this opinion and with the stipulation. We have not considered how the repeal of the code of 1857 affected this suit, which was then pending. The point was not argued, and the case is disposed of without the necessity of our deciding the question.

Judgment reversed and cause remanded.