FARMLAND ENTERPRISES, INC., APPELLEE, V. GERALD SCHUEMAN AND DONNA RAE SCHUEMAN, APPELLANTS.

322 N.W.2d 665

Filed July 30, 1982. No. 44337.

N. Michael D'Angelo of Hogzett & D'Angelo, and Thomas C. Emery, for appellants.

John E. North, Jr., of Fromkin, Herzog, Jabenis & North, and James P. Linn of Linn, Helms, Kirk & Burkett, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, and HASTINGS, JJ., and BRODKEY, J., Retired.

KRIVOSHA, C.J.

This appeal involves the question of whether the appellee, Farmland Enterprises, Inc. (Farmland), contracted for, received, or reserved a rate of interest on a contract entered into by and between Farmland and the appellants, Gerald Schueman and Donna Rae Schueman (Schueman), in excess of the rate provided by Neb. Rev. Stat. § 45-101.03 (Reissue 1978), thereby limiting Farmland's recovery on its contract with Schueman to the principal only. See Neb. Rev. Stat. § 45-105 (Reissue 1978). The trial court held that Farmland did not contract for, receive, or reserve usurious interest, and found in favor of Farmland. Our examination of the record reveals that the trial court was correct in its ultimate conclusion. We therefore affirm.

On February 15, 1971, Farmland and Schueman entered into an agreement whereby Farmland sold and Schueman purchased what is described as transportation interests. The total purchase price was in the amount of $653,333, of which $195,000 was paid on June 1, 1971, and the balance was to be paid in four unequal yearly installments of principal and

accumulated interest. The contract provided that the balance in the amount of $458,333 was to bear interest from January 1, 1971, at the rate of 6 percent per annum or "the prime rate in effect at Northwestern National Bank at Omaha, Nebraska [Bank], whichever is greater."

Schueman defaulted on one of the installment payments and suit was commenced by Farmland against Schueman on December 21, 1979. Schueman raised as a defense that Farmland had contracted for usurious interest, in violation of § 45-101.03, and therefore Schueman was entitled to the benefits of § 45-105.

During all of the times relevant to this action, § 45-105 provided: "If a greater rate of interest than is allowed in section 45-101.03 shall be contracted for or received or reserved, the contract shall not on that account be void, but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall recover only the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid . . . ."

On August 24, 1975, Neb. Rev. Stat. § 45-101.04 became effective and provided in part as follows: "The limitation on the rate of interest provided in section 45-101.03 shall not apply to: . . . (4) Loans made when the principal amount of the indebtedness is one hundred thousand dollars or more."

The trial court found that the transaction between Farmland and Schueman was not subject to the penalty provisions of § 45-105 because the record established that Farmland did not "intend" to contract for usurious interest. In reaching its conclusion, the trial court relied upon our decision in *Loucks v. Smith,* 154 Neb. 597, 599, 48 N.W.2d 722, 724 (1951), wherein we said: " '* * * in order to constitute

usury, there must be (1) a loan, express or implied; (2) an understanding between the parties that the money lent shall or may be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned.' ''

Schueman argues that the trial court erred in this finding because intent may be presumed merely by reason of the fact that a contract which was entered into by the parties might permit the collection of a usurious rate of interest. The contract in question provided that Schueman would pay to Farmland a rate of interest of 6 percent per annum or the "prime rate in effect at Northwestern National Bank at Omaha, Nebraska, whichever is greater." On the day on which the contract was entered into, to wit, February 15, 1971, neither the 6 percent rate called for in the contract nor the prime rate at the Bank was usurious. A contract is not usurious on its face merely by reason of the fact that circumstances may arise in the future which could result in the contract thereby becoming usurious. Schueman argues that because the contract provided that the interest rate was to be determined by a bank over which the parties had no control, the interest rate might become usurious and therefore the contract provided for usurious interest on its face. Schueman, however, cites no authority for that position, nor are we able to find any. Obviously, the Legislature could continue to amend the interest statute during the entire period of the contract so that the statutory maximum would always be in excess of the prime rate at the Bank. The simple fact of the matter is that the contract, on its face, was not usurious, nor did it "contract" for a greater rate of interest than that allowed by law.

That, however, does not resolve the issue, because § 45-101.04 not only makes it illegal to "contract" for

usurious interest but also makes it illegal to "receive" usurious interest. There is some evidence in the record to support a claim that during some portions of the contract Farmland received interest in excess of that authorized by law, although this also depends upon how the interest is computed during the term of the contract. Therefore, unless the transaction is otherwise exempted from the provisions of § 45-105, Schueman's claim for relief under § 45-105 must be examined. We need not make that examination because we believe that the enactment of § 45-101.04 prior to the time that suit was brought by either party precludes Schueman from raising the defense of usury in this action.

As we have previously noted, as of August 24, 1975, the Legislature of the State of Nebraska exempted transactions of this type from the provisions of § 45-101.03. Schueman argues that because the contract was entered into prior to the effective date of the statute, the enactment of the statute cannot be taken advantage of by Farmland. We have held to the contrary. In *Davis v. General Motors Acceptance Corp.,* 176 Neb. 865, 127 N.W.2d 907 (1964), we made a detailed and complete analysis of the effect of a statute similar to § 45-101.04. In holding that the Legislature could exempt transactions in existence prior to the effective date of the act, we said at 873-74, 127 N.W.2d at 913: "A forfeiture such as is prescribed in the Installment Loan Act is generally considered to be penal in nature. Because usury statutes are generally held to be penal in nature, they are subject to amendment or repeal by retroactive legislation. The rule is stated in 16 C.J.S., Constitutional Law, § 254, p. 1246, as follows: 'There is no vested right in the usury laws, which, therefore, may be repealed or changed so as to affect causes of action and defenses even in pending suits.'
. . . .
" '. . . All pending actions and proceedings to re-

cover a penalty which have not been prosecuted to a final judgment are defeated by the repeal. Therefore, the repeal of a statute which imposes a penalty will prevent any prosecution, trial, or judgment for penalties accruing while such statute was in force, unless the contrary is provided in the repealing statute or some other existing statute.' ''

In *Davis* we specifically quoted from *Ewell v. Daggs,* 108 U.S. 143, 2 S. Ct. 408, 27 L. Ed. 682 (1883), saying at 875-76, 127 N.W.2d at 914: '' 'Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. . . .' ''

We concluded in *Davis, supra* at 876, 127 N.W.2d at 914, by saying: ''The foregoing authorities establish that there is no vested right in a usury statute.''

Section 45-101.04 did not save any transactions from the effect of its provisions, and Neb. Rev. Stat. § 49-301 (Reissue 1978) makes it clear that the instant transaction was not saved. Section 49-301 provides: ''Whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of action not in suit that accrued prior to any such repeal, except as may be

provided in such repealing statute." When enacting § 45-101.04, the Legislature specifically repealed § 45-105 and reenacted it in the new law, 1975 Neb. Laws, L.B. 349.

The right to claim usury possessed by Schueman prior to the enactment of § 45-101.04 was neither a "pending action" nor a "cause of action not in suit."

We have made it clear by our previous holdings that the benefits afforded a borrower under the usury laws of the State of Nebraska do not constitute an independent cause of action but only a defense to a cause of action. In *Seldin v. Northland Mortgage Co.,* 189 Neb. 175, 177, 202 N.W.2d 174, 177 (1972), we said: "It is well established in this State that usury is a defense rather than a cause of action, and that after usurious interest has been paid an action will not lie to recover it."

In *Davis, supra* at 874, 127 N.W.2d at 913, we further noted: " 'Upon the theory that the privilege of pleading usury as a defense pertains only to the remedy and is not an element in the rights inhering in the contract, many courts have held that the legislature by the amendment or repeal of the usury statutes abridge or take away the right to assert usury as a defense as to contracts previously entered into. It is generally considered that parties to usurious contracts hold any right they may have to penalties given by law, subject to a modification or repeal by the legislature, and that the repeal of a statutory prohibition against usury releases any penalties imposed, and thus validates the contract.'

". . . 'A mere penalty never vests, but remains executory; the repeal of a statute before a penalty is enforced is not a deprivation of vested rights. The unqualified repeal of a statute imposing a penalty operates the same way as the repeal of a strictly criminal statute. It abrogates all rights of action which have not been reduced to judgments. . . .' "

We believe that the enactment of § 45-101.04 some

4 years prior to the bringing of a suit in this case exempted this transaction from the provisions of § 45-105 and the limitations imposed by § 45-101.03. To the same effect see *Orden v. Crawshaw Mtg. & Inv. Co., Inc.,* 109 Cal. App. 3d 141, 167 Cal. Rptr. 62 (1980); *United Realty Trust v. Property Dev., etc.,* 269 N.W.2d 737 (Minn. 1978); *American Sav. Life Ins. Co. v. Financial Aff. Man. Co., Inc.,* 20 Ariz. App. 479, 513 P.2d 1362 (1973); *Deposit Guar. Bk. & Tr. Co. v. Williams,* 193 Miss. 432, 9 So. 2d 638 (1942).

Schueman argues, nevertheless, that even if § 45-101.04 is applicable generally, it does not apply in this case because the transaction is not a loan covered by § 45-101.04 but, rather, a forbearance. We believe, as the trial court found, that the assertion is without merit. A forbearance of money occurs when a debt is already due and owing and the creditor agrees to forbear collection of it. This was clearly pointed out in the case of *Carper v. Kanawha Bk. & Trust Co.,* 157 W. Va. 477, 493, 207 S.E.2d 897, 909 (1974), wherein the court said: "[T]he distinction between a loan and a forbearance [is] that a loan is a contemporaneous transaction evidencing the creation of a debt to be repaid, while a forbearance is a subsequent agreement entered into between a debtor and creditor to secure the repayment of a debt previously created and matured." See, also, Forbearance, Black's Law Dictionary 773 (4th ed. 1957). Here the debt was not yet due and therefore could not be a forbearance.

Such a holding would be consistent with our view expressed in *Lloyd v. Gutgsell,* 175 Neb. 775, 124 N.W.2d 198 (1963), where we held that if a car dealer in selling a car actually agrees with the buyer that he will finance the balance of the cash purchase price agreed upon, even though he has not loaned any money in the first instance, the transaction is a loan to finance the balance of the cash purchase

price. We believe that the analogy is applicable in this case.

The judgment of the trial court is affirmed.

AFFIRMED.